
RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 10, 20, 06

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

HAROLD BREAUX, SR.                          CIVIL ACTION NO. 04-0008

VERSUS                                       JUDGE DOHERTY

MICHAEL BROWN, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY, AND                MAGISTRATE JUDGE HILL
LAFAYETTE CITY-PARISH
CONSOLIDATED GOVERNMENT

## MEMORANDUM RULING

Currently pending before the Court is defendant Michael Brown's "Motion for Summary

Judgment Based on Qualified Immunity" [Doc. 43][1], seeking dismissal with prejudice of plaintiff's

"federal claims" against Officer Michael Brown in his individual capacity.[2]

### I. Facts

**A. Undisputed Facts**

On September 16, 2002, an undercover agent with the Louisiana State Police was conducting

a narcotics investigation in Lafayette, Louisiana when an unknown black male wearing a yellow

raincoat attempted to rob the undercover officer with a semi-automatic handgun. As a result of the

investigation into the attempted armed robbery, search and arrest warrants were issued on September

18, 2002 by Judge Thomas Frederick of the Fifteenth Judicial District Court for the arrest of Harold

---

[1] The motion is deemed by this Court as a Motion for Partial Summary Judgment, as it is not dispositive of all claims asserted against this particular defendant.

[2] All defendants in this matter previously filed a Motion for Summary Judgment which encompassed the same claims made herein, as well as other claims. That motion was denied on January 4, 2006 for failure to carry its burden of proof. [Doc. 32].

Breaux, Jr. and for a search of the Breaux residence at 309 Belleau Street, Lafayette, Louisiana.[3] On the morning of September 25, 2002, at the request of the State police, Officer Michael Brown, a police officer with the Lafayette City Police Department working in conjunction with the Louisiana State police, went to the Breaux residence to determine whether or not Harold Breaux, Jr. was at the residence so that the warrants could be executed by the State Police.[4] The State Police had the search and arrest warrants in their possession and were on their way to the Breaux residence. (Officer Brown deposition, p. 29).

Officer Brown, accompanied by City Marshal Byron Pope, arrived at Harold Breaux, Sr.'s residence and knocked on the door.[5] Harold Beaux, Sr. answered the door and Officer Brown, wearing his police uniform, verbally identified himself as a police officer. Officer Brown informed plaintiff of the arrest warrant for his son and the search warrant for the Breaux residence. Plaintiff asked Officer Brown to produce the warrants, and when the officer failed to produce the warrants, plaintiff refused to allow Officer Brown entry to the residence. [Doc. 1, ¶6]

---

[3] Harold Breaux, Jr. was residing at that time with his father, Harold Breaux, Sr., plaintiff herein.

[4] According to the testimony of Officer Brown, his involvement in this matter began when he was contacted by the State Police at some point prior to September 18, 2002 for help in the investigation of the attempted armed robbery of the undercover agent. Officer Brown was contacted by the State Police because he knew most of the residents in the area where the attempted robbery had taken place as he was assigned to patrol the area where the attempted robbery occurred. The State Police asked Officer Brown to watch a video of the crime and help identify the suspect. Apparently Harold Breaux, Jr.'s hair style was different in a police photograph and the video, and the State Troopers asked for Officer Brown's help in determining whether the person(s) in the video and the photograph were the same. [Deposition of Officer Brown.]

[5] Deputy Pope is not a defendant in this matter, and plaintiff has not complained of any conduct of Deputy Pope.

## B. Disputed Facts

According to plaintiff, when Officer Brown refused to show plaintiff the warrants, he asked Officer Brown where the warrants were located. Plaintiff asserts Officer Brown told him the warrants were in his police vehicle, which was parked in the driveway of plaintiff's residence. Plaintiff claims he asked again to see the warrants, and Officer Brown again refused and demanded to be admitted into the house. Plaintiff again refused and again demanded to see the warrants "since they were allegedly right there in Officer Brown's car." [Doc. 45, p. 2] Plaintiff claims Officer Brown's response to plaintiff's refusal was "to body slam plaintiff against the front outside wall of his own house, breaking the door bell. Officer Brown and the plaintiff then began to tussle, whereupon Officer Brown backed off momentarily and then body slammed plaintiff against the screen door, breaking the door handle." [Doc. 45, pp. 2-3] Plaintiff claims he opened the screen door and wooden door, stepped back into the doorway of the living room and was again "body slammed or very forcefully pushed . . . against the trophy case that stood along the wall of the front room, to the right, causing the plaintiff to severely twist left knee. . . ." [Doc. 45, p. 3]

The next events, according to plaintiff, are as follows:

Defendant Officer Michael Brown stormed into the living room and went down the hall to the kitchen/dinning room, where, much to his chagrin, he confronted a roomful of witnesses, including Harold Breaux, Jr., who was sitting on a chair to the right, watching tv, well out of view of the hallway.

Defendant Brown walked up to Harold Breaux, Jr. and told him that he was under arrest, and he ordered Harold Breaux, Jr. to get up out of the chair. By this time Harold Breaux, Sr., had entered the same room and ordered his son to remain sitting in the chair until Officer Brown would produce the warrant. Repeated orders by defendant Brown to Harold Breaux, Jr. to get up out of the chair were met with orders from plaintiff to his son to remain seated. This impasse lasted for several minutes, during which time plaintiff had a relative call 911 for assistance against the unlawful entry and police misconduct of Officer Brown. Then, a hoard of other officers from at least two law enforcement agencies stormed into the room. . . .

An officer finally arrived with an arrest warrant and a search warrant, but the search had already begun before the arrival of said officer. [Doc. 13, pp. 3 - 4]

Defendant's version of events is quite different. According to defendant, while talking with Mr. Breaux, Sr. about the warrants, he spotted Harold Breaux, Jr. inside the house through a small opening in the front door, and then saw Harold Breaux, Jr. walk out of his sight.[6] Officer Brown testified that he then "made the split second decision to make entry into the residence even though he was not technically in possession at the moment of the warrants." [Doc. 43-3, p. 3] According to Officer Brown's testimony, he pushed plaintiff to the side and went forward without incident. [Doc. 43-3, p. 3]

## C. Undisputed Facts

Following the arrest of Harold Breaux, Jr., the residence was searched, yielding a semi-automatic pistol and a yellow rain coat. During the search, a copy of the arrest warrant and search warrant were provided to Mr. Breaux, Sr.

## D. Stipulation of Facts for Purposes of this Motion

Despite the parties disagreement as to the underlying facts, defendant asks the Court to accept plaintiff's version of events as true for the purposes of this motion only, as he argues that even if plaintiff's version of the facts were to be found as true, he is nevertheless entitled to summary judgment in his favor. As such, this Court will find, for the purposes of this motion only, that plaintiff asked Officer Brown more than once to produce the warrants, and in response, Officer

---

[6]Plaintiff argues Officer Brown has committed perjury by stating he spotted Harold Breaux, Jr. through a small opening in the front door. In support, plaintiff argues:

Mr. Brown was outside of the house when he decided to bust his way into the house, and he could not have seen Harold Breaux, Jr., unless he had x-ray and periscopic vision that allowed him to see through Plaintiff (who was standing in the doorway), through mini-blinds, through the wooden front entrance door, through a darkened room and down a darkened hallway. [Doc. 44, Ex. 4, p.5]

Brown body slammed, tussled and/or very forcefully pushed plaintiff four times before gaining entry into the Breaux residence. This Court will also accept, for purposes of this motion only, that Officer Brown was unable to see Harold Breaux, Jr. through an opening in the doorway while speaking with plaintiff about the warrants.

## II. Procedural Background

On September 25, 2003 Mr. Breaux, Sr. filed this lawsuit in State Court; it was later removed to this Court. Plaintiff asserts claims against Officer Brown, in his individual and official capacity, and against the Lafayette City-Parish Consolidated Government for violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment Rights under the United States Constitution. He also asserts claims against both defendants pursuant to Louisiana Civil Code Articles 2315, 2316 and 2320. [Doc. 1, ¶ 2] With regard to plaintiff's Fourth Amendment claim, it appears, although not abundantly clear, he is asserting his Fourth Amendment Rights were violated by Officer Brown, because the actions of Officer Brown constitute "assault and battery, excessive use of force, police brutality and police misconduct." [Doc. 1, ¶15; Doc. 41]

In defendant's Motion for Summary Judgment, he requests plaintiff's "federal claims" against Officer Brown, in his individual capacity only, be dismissed with prejudice at plaintiff's cost. However, defendant addresses only claims under the Fourth Amendment, arising out of the alleged unlawful entry and use of excessive force.[7] As the only claims addressed in the present motion are

---

[7] Exactly what constitutional claims plaintiff is asserting is unclear to the Court. While plaintiff's Complaint states that he is bringing claims for violations of his Fourth, Fifth, Eighth and Fourteenth Amendment Rights under the United States Constitution, plaintiff has, up to this point, not sufficiently developed those claims before this Court. At a conference held in Chambers on January 31, 2005, the Court ordered the parties to file outlines of their claims. The Court ordered that plaintiff's outline specifically identify each and every claim plaintiff intends to assert, separately, as to each defendant in this matter. [Doc. 38] Plaintiff's outline identifies a Fourth Amendment claim against Michael Brown, a Fourth Amendment claim against the Lafayette Consolidated Government, and state claims against Michael Brown and the Lafayette Consolidated Government pursuant to Louisiana Civil Code articles 2315 and 2316. Plaintiff's Outline does not address any of the claims asserted in his

for violation of plaintiff's Fourth Amendment Rights by unlawful entry and excessive force, those are the sole issues of law addressed in this Court's ruling. In a nutshell, defendant's motion argues he is entitled to qualified immunity, because (a) he did not violate plaintiff's Fourth Amendment Rights, and (b) even if plaintiff's constitutional rights were violated, "[Officer Brown's] conduct was objectively reasonable in light of the circumstances and clearly established law, entitling him to qualified immunity." [Doc. 43, p. 2]

## III. Discussion

### A. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Proc. 56(e).

"The moving party bears the burden of identifying an absence of evidence to support the

---

Complaint pursuant to the Fifth, Eighth and Fourteenth Amendments of the United States Constitution, nor claims made pursuant to Louisiana Civil Code article 2320. If plaintiff is indeed asserting those claims, he is ORDERED to supplement his Outline so as to conform with this Court's previous order and submit the supplemental outline to the Magistrate Judge assigned to this matter for review within ten days of receipt of this ruling or this Court will DEEM those claims abandoned.

nonmoving party's case." Capitol Indem. Corp. v. U.S., 452 F.3d 428, 430 (5th Cir. 2006). "Summary judgment is properly granted if the record does not contain appropriate summary judgment evidence which would sustain a finding in the nonmovant's favor on any issue as to which the nonmovant would bear the burden of proof at trial." Id. at 430-31. As noted by the Fifth Circuit:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "the court must view facts and inferences in the light most favorable to the party opposing the motion." Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party." Id. In evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

## B. Qualified Immunity

When a government official abuses his office, an action for damages may be the only realistic avenue for vindication of a petitioner's constitutional guarantees. Anderson v. Creighton, 483 U.S. 635, 638 (1987). On the other hand, allowing suits for money damages against government officials "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Id. The jurisprudence has attempted to accommodate these conflicting concerns "by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Id. "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." Id.

> According to the Fifth Circuit:
>
> When a governmental official with discretionary authority is sued for damages under section 1983 and properly raises the defense of qualified immunity, the plaintiff bears the burden of rebutting that defense. In ruling on a motion for summary judgment based on qualified immunity, the court first determines whether there is evidence to sustain a finding that the defendant's complained of conduct violated plaintiff's constitutional rights. If not, no further inquiry is needed and the defendant is entitled to qualified immunity. If so, the inquiry proceeds to determine whether there is evidence to sustain a finding that under the existing circumstances it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If not, the defendant is entitled to qualified immunity.

Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 301-302 (5th Cir. 2004) (citations and quotations omitted.)

This Court further notes "qualified immunity... provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341

(1986). There is no immunity if *no* reasonably competent officer would have thought his conduct was lawful, "but if officers of reasonable competence *could* disagree on this issue, immunity should be recognized." Id. (emphasis added).

## C. Analysis

As discussed above, this Court's first task is to determine whether or not there is evidence to sustain a finding that Mr. Breaux's Fourth Amendment rights (particularly, to be protected from unlawful entry and excessive use of force) were violated by Officer Brown.[8]

### 1. Unlawful Entry

It appears that Harold Breaux, Sr. asserts that by not showing plaintiff copies of the search and arrest warrants, Officer Brown unlawfully entered his home in violation of the Fourth Amendment's guarantee against unreasonable searches and seizures.[9] The Fourth Amendment to the United States Constitution does not require an officer to present a property owner with a copy of a judicially issued search warrant before conducting his search. United States v. Grubbs, 126 S.Ct. 1494, 1501 (2006). Nor must an officer have an arrest warrant in his possession prior to making an arrest. See Fed. R. Cr. Proc. 4; United States v. One Olivetti Elec. 10-Key Adding Mach., 406 F.2d 1167, 1168 (5th Cir. 1969). The Constitution protects persons and property owners "not by giving them license to engage the police in a debate over the basis for the warrant, but by

---

[8] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures."

[9] As the Court previously stated at footnote 6, it is unclear exactly what constitutional violations plaintiff is asserting. While plaintiff's outline could be construed to address unlawful entry, and defendant's motion asks for summary judgment on this issue, plaintiff's opposition to the motion for summary judgment does not use the term "unlawful entry" but rather "unreasonable failure to produce the warrant" and "unreasonable execution of the warrants." This Court is unaware of any interpretation of the United States Constitution, or more particularly the Fourth Amendment, providing that citizens have a right to be free from unreasonable failures to produce search and/or arrest warrants, or to be free from the unreasonable execution of search and/or arrest warrants. However, for these purposes this Court will assume plaintiff is making a claim for "unlawful entry" and addresses the merits of that claim.

9

interposing, *ex ante*, the 'deliberate, impartial judgment of a judicial officer...between the citizen and the police.'" <u>Grubbs</u> at 1501 (quoting <u>Wong Sun v. United States</u>, 371 U.S. 471, 481-482 (1963)).

Under Louisiana law as well, a police officer need not have an arrest warrant in his possession at the time of arrest, but after arrest, if the person arrested so requests, the warrant shall be shown to him as soon as practicable.[10] La. C. Cr. Proc. art. 217. The rule that an officer need not have physical possession of the warrant at the time of an arrest was extended to search warrants in <u>State v. Mims</u>, 524 So.2d 526, 535-536 (La. App. 2nd Cir. 1998). While the Court found no Louisiana Supreme Court cases addressing this issue, what is important for this Court's purposes is there is no federal constitutional requirement that a search warrant be presented to the property owner at the time of the search.

Plaintiff admits that an officer is not required to have the warrant in his possession, nor is he required to produce the warrant prior to conducting an arrest or a search. [Plaintiff's outline, p. 2; Doc. 45, p. 4] Plaintiff, also, does not argue Officer Brown violated the "knock and announce" component of the Fourth Amendment. Rather, plaintiff argues the law provides an exception to the general rule, which requires that an officer produce the arrest and search warrant "<u>if under the circumstances</u>, it would be <u>unreasonable</u> or <u>in bad faith</u> to not do so." [Doc. 45, p. 4 (emphasis in original)] Plaintiff cites no authority for his position. Plaintiff argues "any reasonable person would have been outraged by Officer Brown's 'in your face' attitude in refusing, for no reason, to produce the warrants that he stated were in his car, only a few feet away." [Doc. 45, p. 5] Plaintiff then lists

---

[10] Indeed, the Louisiana rule may be more onerous on police officers than required by the United States Constitution. As stated in <u>United States v. Stefonek</u>, 179 F.3d 1030, 1034 (7th Cir. 1999) and quoted with approval by the United States Supreme Court in <u>U.S. v. Grubbs</u>, "The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or *indeed until the search has ended*, is... evidence that the requirement of particular description does not protect an interest in monitoring searches." <u>Grubbs</u> at 1501 (emphasis added).

numerous alternative ways Officer Brown could have executed the warrants.[11]

The Supreme Court stated in Payton v. New York, 445 U.S. 573, 602-603 (1980), that for Fourth Amendment purposes, a valid arrest warrant implicitly carries with it the limited authority to enter a dwelling in which a suspect lives, and, in such a situation, a citizen is required to open his doors to officers of the law. Plaintiff has made no argument that the warrants issued in this matter were invalid; he merely complains about their execution. As valid arrest and search warrants were issued in this matter prior to entry into the Breaux residence, plaintiff has failed to carry his burden of proof and show a violation of his Constitutional rights occurred vis-à-vis unlawful entry. Officer Brown's entry into plaintiff's residence was lawful, albeit, perhaps not ideal, and thus, did not violate plaintiff's constitutional rights. Therefore, summary judgment on this issue is GRANTED to defendant Michael Brown in his individual capacity.

### 2. Excessive Force

Plaintiff also appears to be making a claim of excessive force.[12] The Court presumes

---

[11] The Court need not address plaintiff's suggested alternative methods of execution of the warrants because "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity." Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 219 (5th Cir. 1998).

[12] Again, it is not entirely clear to this Court whether plaintiff is actually making a claim for use of excessive force. Plaintiff uses the phrase "excessive use of force" at paragraph 15 of his Complaint. However, as already stated, the Court previously ordered plaintiff to outline all claims, specifically identifying each and every claim plaintiff intends to assert separately, as to each defendant in this matter. [Doc. 38] Plaintiff's outline does not identify a claim for "excessive force." While plaintiff's outline does state defendant violated plaintiff's "4th Amendment Right to be secure in his own home by behavior that involved physical abuse," it then seems to describe a claim for unlawful entry. Plaintiff's Memorandum in Opposition to the Motion for Summary Judgment seems to set forth a factual scenario that plaintiff may be using in support of an excessive force claim, however, the only argument this Court construes to be in support of excessive force is a one sentence paragraph in a section captioned "No Entitlement to Qualified Immunity," which states:

The actions of Officer Brown in lying to Plaintiff regarding the whereabouts of the warrants and then needlessly slamming him against the outside wall of his house, against the screen door, against the inner wooden door, and finally against the trophy case was

plaintiff's claim of excessive force arises out of the four instances of "body slamming" plaintiff alleges occurred. Therefore, the Court must first determine whether or not Officer Brown's conduct violated plaintiff's constitutional right to be free from the use of excessive force.

The Fourth Amendment, with its standards of reasonableness, governs claims of excessive force in the context of an arrest, investigatory stop, or other seizure of a free citizen. Graham v. Connor, 490 U.S. 386, 394-395 (1989).[13] A determination of whether "the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396.

In the Fifth Circuit, in order to state a prima facie claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir. 1993). Additionally:

> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not in every push or shove, *even if it may later seem unnecessary in the peace of a judge's chambers,* violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation. Graham v. Connor, 490 U.S. 386, 396 (1989) (emphasis added; internal quotations and citations omitted).

---

"in bad faith" and "excessive to the need" and constituted force that is objectively unreasonable.

Out of an abundance of caution, this Court will address an excessive force claim.

[13] "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" Id. at footnote 10 (citing Terry v. Ohio, 392 U.S. 1 (1968)).

With regard to the first element of plaintiff's prima facie claim – an injury – plaintiff alleges in his Complaint that his "injuries have required medical treatment and significant treatment is expected to be required in the future." [Doc. 1, ¶ 11] He also alleges that he has "suffered mental and emotional distress, humiliation, inconvenience, aggravation and outrage, psychological harm and embarrassment." Id. Defendants concede, for purposes of this motion only, that plaintiff will be able to prove an injury. [Doc. 51, p. 9] As such, this Court will, for these purposes only, find plaintiff has met the first element of his prima facie claim for excessive force by alleging he suffered an injury.

As to the second element – the injury resulted <u>directly</u> and <u>only from</u> use of force clearly excessive to the need – defendant argues the injuries plaintiff claims to have suffered from this incident were actually caused by a pre-existing injury for which plaintiff was being treated prior to the subject incident. The only response by plaintiff, as best the Court can determine, is found in plaintiff's opposition memorandum at page eight:

> The Plaintiff's injuries are more than de minimus, as will be detailed further herein. As a result of the Defendants' actions, the Plaintiff, who already suffered with depression and schizophrenia suffered even worse and restricted his activities outside of the home so as to avoid further interaction with the police, who he had already seen repeatedly harassing his son, Harold Breaux, Jr. for over a five year period.[14]

Neither party has pointed the Court to jurisprudence elaborating on the second element of an excessive force claim. By plaintiff's own argument, he will not be able to prove that his depression and schizophrenia resulted directly *and only* from the use of excessive force by Officer Brown. However, defendant errs in concluding that this resolves the issue. In plaintiff's complaint,

---

[14] Plaintiff never provides the promised "further details." The only other reference to damages the Court can find in plaintiff's documents is found in plaintiff's outline, which states plaintiff's damages "will not be easy to prove due to pre-existing injuries and the continuing treatment for those injuries." [Plaintiff's outline, pp. 3-4]

he seeks damages for unidentified physical injuries, mental and emotional distress, humiliation, inconvenience, aggravation and outrage, psychological harm and embarrassment. Some of these injuries may or may not have resulted directly and only from excessive force by Officer Brown. Certainly plaintiff's testimony supports his position that the injuries resulted directly from this incident. As such, the Court finds defendant has failed to identify the requisite absence of evidence to support the second element of plaintiff's prima facie claim for excessive force.

However, that is not where the inquiry ends. Presuming plaintiff has stated sufficient injuries caused by Officer Brown's conduct, he must nevertheless, show under the third element of a prima facie claim for excessive force that the use of force was "objectively unreasonable." Defendant argues the force was reasonable and contends:

> Harold Breaux, Sr.'s own testimony is that it took that amount of force for Brown to get past him while Breaux was unlawfully obstructing a valid execution of a warrant. Also, as supported by the plaintiff's own testimony, which is corroborated by the testimony of the other family members present at the time of the incident, Harold Breaux, Sr. repeatedly interfered with Officer Brown's attempts to enter the Breaux residence after Officer Brown announced his authority and presence.[15]

[Doc. 43-3, pp. 9 & 10]

The only arguments made by plaintiff in opposition which this Court can discern and presumes are in response to defendant's position are: (1) "Officer Brown apparently did not consider that he faced much risk or danger, since only one officer, a deputy city marshal, accompanied him to the plaintiff's home on September 25, 2002. If Officer Brown had thought there was a great chance of the arrestee's escape, he would have posted an officer at each exit to the house." [Doc. 45, p. 6]; (2) Officer Brown perjured himself because the only time he could have seen the arrestee "was

---

[15] Defendant has not cited the Court to that specific testimony, but rather has submitted numerous depositions, as well as numerous other documents. Following this Court's review of the hundreds of pages submitted to it, it finds defendants characterization to be perhaps a bit overbroad, but nonetheless takes note of defendant's argument.

after he had already busted his way into the house." [Doc. 45, p. 7]; (3) "Mr. Brown was not interesting [sic] in calming things down. In fact, while dialing 911, Jeanette Domingue [plaintiff's sister-in-law] kept her eyes on Officer Brown and Harold Breaux, Sr. She stated: 'I was focused on them because I – wanted to make sure this man didn't shoot my brother-in-law, because he was wild. That police officer was king of wild.' " [Doc. 45, p. 7]; (4) "The actions of Officer Brown in lying to plaintiff regarding the whereabouts of the warrant and then needlessly slamming him against the outside wall of his house, against the screen door, against the inner wooden door, and finally against the trophy case was in 'bad faith' and 'excessive to the need' and constituted force that is objectively unreasonable." [Doc. 45, p. 8]

In spite of plaintiff's arguments, and in light of the standards noted above by which this Court is bound, this Court must find the force used by Officer Brown was reasonable under the circumstances. As previously stated, in part:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. ... Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

Graham at 396-397 (citations and internal quotations omitted).

In support of the "reasonableness" of Officer Brown's conduct, defendant has submitted the report of Officer Michael Odle, an Assistant Squad Leader of the Special Weapons and Tactics (SWAT) platoon for the City of Los Angeles.[16] Officer Odle states in his report:

> Mr. Harold Breaux Jr. was wanted for the attempted and armed robbery of an undercover law enforcement officer who was actively involved in the investigation of street-level sales of crack cocaine. Within walking distance of the home he shared with his family, Breaux Jr. chose to conduct dangerous and illegal activity by using a handgun in an attempt to rob the undercover officer of his money. . . .

> Interactions with criminals like Breaux Jr. make police officers keenly aware that persons involved in dangerous criminal activity are not necessarily bound by familial ties. This means that their families are vulnerable to the possibility that violence may be perpetrated upon them by those criminals. Rather than submit to arrest, criminals have exposed family members to extreme danger. They also have exploited the bond that their families feel for them in order to thwart being arrested or to facilitate their attempt at escape. Violence perpetrated by criminals against siblings and/or parents for the sake of self-preservation is not an anomaly. . . .

> At the time of the warrant service, Corporal Brown and Deputy Marshall Pope embarked on their endeavor with the understanding that it was their job to take a very dangerous person into custody. That person was Mr. Harold Breaux Jr.

> Upon his arrival at the Breaux residence, Corporal Brown and Deputy Marshall Pope were confronted by Mr. Harold Breaux Sr., Harold Breaux Jr.'s father. *Breaux Sr. was first verbally, then physically, defiant and attempted to deny the officers access to the residence. While this exchange was taking place, Corporal Brown observed Breaux Jr. exit from a room within the residence and then move out of his line of sight.* Mindful that Breaux Jr. may attempt to escape or to arm himself with a firearm, Corporal Brown had to take action. *However, this action was hindered by Breaux Sr. who, by his own admission, describes how he was "defending himself" as he grabbed the officer (Brown) from behind.* But, as a law enforcement officer, Corporal Brown was duty-bound to protect the welfare of other persons despite the actions of Breaux Sr. Consequently, Corporal Brown had to make an immediate entry into the Breaux residence even if that meant having to force Breaux Sr. out of his path. This course of action was successful because Corporal Brown captured Breaux Jr. and placed him under arrest – all without incident or injury to Breaux Jr.

---

[16] Defendant identifies Officer Odle in his supporting memorandum as "Defendant's expert" [Doc. 43-3, p. 8]. Officer Odle's report asserts he has specialized knowledge of developing and implementing tactics to resolve barricaded gunmen situations. Plaintiff has not objected to the report of Officer Odle or his designation as an expert witness.

and the innocent bystanders in the home.  (Emphasis added.)[17]

This Court agrees with the opinions of Officer Odle (but substitutes plaintiff's version of the facts for purposes of this motion only - see note 17).  When Officer Brown arrived at the Breaux residence to execute the warrants, his utmost concern must necessarily have been for the safety of everyone at the scene.  Officer Brown was attempting to arrest a suspect who, based upon the information provided to the officers and thus, in the minds of all law enforcement officers involved, was armed, dangerous and had little regard for the safety of those who crossed his path.  Although plaintiff argues Officer Brown could not possibly have seen Harold Breaux, Jr. prior to unlawfully entering the house, he does not dispute Harold Breaux, Jr. lived at the residence, nor does he dispute the fact that at some point, Harold Breaux, Jr. was seen by Officer Brown (albeit, according to plaintiff, "unlawfully").  Even had Officer Brown not seen Harold Breaux, Jr. prior to entry, as plaintiff contends and the Court accepts for purposes of this motion, Officer Brown was nonetheless entirely within Constitutional bounds to enter the named suspect's residence - Officer Brown knocked, announced his presence, and was acting pursuant to a previously issued, valid warrant to effect the arrest of Harold Breaux, Jr. and search the premises, person and/or vehicle located at 309 Belleau Street, Lafayette, Louisiana.[18]  [Doc. 43-4, Ex. D & E]  The circumstances required Officer Brown take immediate action and arrest Harold Breaux, Jr. to minimize the possibility of anyone's being injured.  Others were in the residence and their safety was a necessary concern.  The person to be arrested, who law enforcement believed to be in the residence, was considered to be armed and dangerous and wanted for attempted armed robbery.  Thus, when met with deliberate attempts to

---

[17]The statements quoted above which the Court has marked in italics are disregarded by the Court for purposes of this motion only, as defendant has stipulated to plaintiff's version of the underlying facts for purposes of this motion. See § I(D), supra.

[18]No one has disputed the officer knocked, then announced his authority, presence and purpose.

obstruct his entry and arrest, Officer Brown took what action he deemed necessary under the circumstances. While Officer Brown's actions may not have been ideal, they were not objectively unreasonable.

In light of the jurisprudence noted above, this Court cannot conclude Officer Brown's actions in arresting Harold Breaux, Jr. were "objectively unreasonable" or "excessive for the need." As plaintiff has failed to meet his prima facie burden showing Officer Brown's use of force was objectively unreasonable, the Court finds plaintiff's constitutional right under the Fourth Amendment to be free from excessive force was not violated. Thus, the Court need not turn to the second prong of a qualified immunity analysis – whether there is evidence to sustain a finding that under the circumstances it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted.[19]

## IV. Conclusion

Due to the reasons stated above, the Court hereby GRANTS in part and DENIES in part defendant's Motion for Summary Judgment. The Court GRANTS summary judgment on all claims

---

[19] This Court notes however, that its findings would be virtually identical as those stated in the preceding paragraph. More specifically, this Court would conclude that a reasonable officer who, faced with a situation in which he arrived at the residence of a suspect who was considered to be armed and dangerous to multiple law enforcement agencies, attempted to execute valid search and arrest warrants, was met with repeated attempts to physically block his progress into the residence where the suspect was believed to be, was aware other persons were in the house and possibly in danger, such a reasonable officer would have believed his actions lawful when he attempted to remove the physical obstruction to his entry. (This finding, which of course is merely dicta, does not even begin to address the fact that by his own testimony, plaintiff was himself committing the criminal act of resisting an officer. See La. R.S. 14:108.)

Furthermore, even if this Court were to reach the "reasonableness" prong of a qualified immunity analysis, the Court notes when a defendant pleads qualified immunity as an affirmative defense, the burden of negating the defense lies with the plaintiff. Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001). Plaintiff cannot rest on the pleadings, but instead must show genuine issues of material fact concerning the reasonableness of Officer Brown's conduct. Id. Plaintiff has not carried that burden.

of excessive force and unlawful entry asserted against defendant, Officer Michael Brown, in his individual capacity.

The Court DENIES defendant's motion to the extent it requests action on any other "federal claims" that may or may not be asserted by plaintiff, on the basis that defendant has failed to carry his burden of proof.

THUS DONE AND SIGNED at Lafayette, Louisiana, this 20th day of October, 2006.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE